**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**DONTEZ JOHNSON**,

       Plaintiff,

v.                                          **CIVIL ACTION NO. 2:17-CV-148
(BAILEY)**

**S. KALLIS**, **et al.**,

       Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

On this day, the above-styled matter came before this Court for consideration of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. 80], filed November 15, 2019. Having been fully briefed, this matter is now ripe for decision. For the reasons set forth below, the Motion will be granted.

**BACKGROUND**

Plaintiff was sentenced on July 15, 2005, in the United States District Court for the Northern District of Ohio to a 110-month term of imprisonment for Conspiracy with Intent to Distribute and Distribution of Crack Cocaine. Plaintiff was released from Bureau of Prisons ("BOP") custody on December 11, 2013, and placed upon supervised release. On May 23, 2017, plaintiff's supervised release was revoked, and he was recommitted to BOP custody on June 26, 2017, to serve a 24-month sentence. Plaintiff was designated to FCI Hazelton, and remained there until February 5, 2018. Plaintiff was released from BOP custody on March 23, 2018.

1

On January 4, 2018, plaintiff filed a ***Bivens*** Complaint on the Court-approved form [Doc. 7]. Plaintiff's Complaint alleges defendants, who are current and former staff members at FCI Hazelton, violated his constitutional rights on various occasions while he was designated to FCI Hazelton. As noted in Magistrate Judge James P. Mazzone's Order to Answer, the Complaint contains 36 allegations and is "written in pencil and is difficult to read" [Doc. 36 at 2]. "Broadly grouped, the Complaint makes allegations of: (1) conditions of confinement; (2) denial of access to the courts; (3) retaliatory acts; (4) racial discrimination; (5) sexual harassment; and (6) religious discrimination" [Id.]. Although the Complaint is difficult to read and interpret, defendants summarize that the following allegations are being asserted for each broad group:

***(1) Conditions of Confinement – Eighth Amendment***

*Claim 4:* Plaintiff alleges, upon transfer to FCI Hazelton, that he was served food to which the BOP knows he is allergic. ECF 7, PageID# 49.

*Claim 6:* Plaintiff alleges that he has been denied the ability to buy soap, deodorant, toothpaste, writing paper, envelopes, pens, and food items. ECF 7-1, PageID# 52.

*Claim 10:* Plaintiff alleges he was forced to sleep on a "steel slab from 8-21-17 to 8-26-17." ECF 7-1, PageID# 54.

*Claim 13:* Plaintiff alleges that he was "locked up for seven days" and only received a hot cheeseburger for lunch. ECF 7-1, PageID# 55.

*Claim 19:* Plaintiff again alleges he was served food to which he is allergic. ECF 7-1, PageID# 57.

*Claim 23:* Plaintiff alleges it is improper for him to be denied access to pictures while in the SHU. ECF 7-1, PageID# 58.

*Claim 27:* Plaintiff alleges he was improperly sanctioned to loss of his mattress.

ECF 7-1, PageID# 59–60.

*Claim 28:* Plaintiff alleges he was improperly forced to bathe with shampoo for "16 or 17 weeks" while in "solitary confinement."  ECF 7-1, PageID# 60.

*Claim 33:* Plaintiff alleges he was improperly forced to sleep on a freezing steel slab for 15 hours each day.  ECF 7-1, PageID# 63.

*Claim 34:* Plaintiff alleges he was improperly sanctioned to loss of food items, hygiene items, pens, writing papers, and envelopes because he was on "A/D status."  ECF 7-1, PageID# 63.

*Claim 35:* Plaintiff alleges he was improperly limited to one fifteen minute phone call per month and forced to bathe with just shampoo for 17 or 18 months.  ECF 7-1, PageID# 63–64.

*Claim 36(5):* Plaintiff alleges he was improperly forced to use a pencil.  ECF 7-1, PageID# 65.

**(2) Denial of Access to the Courts – First Amendment**

*Claim 2:* Plaintiff alleges he has been denied access to the Court because FCI Hazelton staff denied the administrative remedies he filed.  ECF 7, PageID# 48.

*Claim 3:* Plaintiff alleges he has three separate lawsuits pending and Plaintiff claims that he is improperly limited to only one hour per week of library research.  ECF 7, PageID# 48.

*Claim 7:* Plaintiff alleges that the warden told him that "BP-9s tend to get lost or thrown away" and that the warden "condones his staff to [purposely] throw my administrative remedies away."  ECF 7-1, PageID# 52–53.

*Claim 8:* Plaintiff alleges that FCI Hazelton staff are "playing" with his mail sent from FCI Hazelton to Charleston, West Virginia.  ECF 7-1, PageID# 53.

*Claim 11:* Plaintiff alleges that his case manager at FCI Hazelton refused to notarize legal documents for him and told him that he doesn't "understand French fry talk."  ECF 7-1, PageID# 54.

*Claim 14:* Plaintiff alleges that his Unit Counselor refused to take a BP-8. ECF 7-1, PageID# 55.

*Claim 15:* Plaintiff alleges executive staff refused to take an inmate request. ECF 7-1, PageID# 55.

*Claim 24:* Plaintiff alleges Associate Warden Jared Rardin is denying Plaintiff sufficient time to research and study to prepare a proper defense. ECF 7-1, PageID# 58.

*Claim 26:* Plaintiff alleges FCI Hazelton Staff refuses to respond to an administrative remedy regarding staff improperly reading Plaintiff's outgoing mail. ECF 7-1, PageID# 59.

*Claim 29:* Plaintiff alleges FCI Hazelton Staff refused him administrative remedies for 18 weeks in a row. ECF 7-1, PageID# 60–61.

*Claim 30:* Plaintiff alleges FCI Hazelton Staff refused him the ability to use a pen to draft his legal pleadings as Ordered by the Court. ECF 7-1, PageID# 61.

### *(3) Retaliatory Acts – First Amendment*

*Claim 1:* Plaintiff alleges he has been subjected to retaliatory acts while housed in protective custody in the Special Housing Unit ("SHU") by FCI Hazelton correctional staff. ECF 7, PageID# 47–48.

*Claim 12:* Plaintiff alleges he has been subjected to retaliatory acts for filing administrative remedies that include a correctional officer sticking his fingers in his food and announcing that he is a "snitch." ECF 7-1, PageID# 54.

*Claim 16:* Plaintiff alleges that FCI Hazelton staff falsified a government document. ECF 7-1, PageID# 55.

*Claim 17:* Plaintiff alleges that FCI Hazelton staff falsified a report and that he received improper sanctions. ECF 7-1, PageID# 56.

*Claim 18:* Plaintiff alleges that, because he is utilizing his right to the courts, FCI Hazelton staff made a "smart remark" toward him, which caused Plaintiff to yell obscenities at staff. ECF 7-1, PageID# 57.

*Claim 25:* Plaintiff alleges that Warden Frederick Entzel falsified a government document. ECF 7-1, PageID# 59.

*Claim 31:* Plaintiff alleges that because he filed an administrative remedy

regarding his right to use the law library he was moved to a cell with a defective toilet. ECF 7-1, PageID# 62.

### *(4) Racial Discrimination – Fifth Amendment*

*Claim 5:* Plaintiff alleges that he was subjected to certain loss of privileges while "fishing on the range" and that other white inmates were not subjected to the same loss of privileges. ECF 7, PageID# 49.

*Claim 20:* Plaintiff alleges that white inmates were given preference over black inmates because "cell 134" was given new paper suits. ECF 7, PageID# 57.

### *(5) Sexual Harassment – No Constitutional Allegation*

*Claim 9:* Plaintiff alleges FCI Hazelton staff made sexually explicit and offensive comments about Plaintiff during search protocols. ECF 7-1, PageID# 53.

### *(6) Religious Discrimination – First Amendment*

*Claim 32:* Plaintiff alleges he is being denied his right to practice religion and that preferential treatment is given to Christians. ECF 7-1, PageID# 62.

[Doc. 81 at 14–16]. Plaintiff presents no objection to this summarization. For relief, plaintiff seeks $100,000 in damages and requests to be transferred.[1]

Defendants argue that plaintiff's Complaint must be dismissed for the following reasons:

> First, Plaintiff's ***Bivens*** Complaint must be dismissed for failure to exhaust his administrative remedies. Second, all of Plaintiff's claims present novel theories that are precluded from the limited contexts in which the Supreme Court of the United States has authorized ***Bivens*** liability pursuant to ***Ziglar v. Abbasi***, 137 S.Ct. 1843 (2017). Third, Plaintiff's ***Bivens*** Complaint must be dismissed as all defendants are entitled to qualified immunity. Fourth, Defendants Dunbar, Kallis, and Entzel must be dismissed as the concept of *respondeat superior* does not exist in ***Bivens*** litigation.

---

[1] Even if a transfer were relief this Court could provide, as previously noted plaintiff was released from BOP custody on March 23, 2018.

[Doc. 81 at 2].

Plaintiff responds that he "did exhaust all [of his] administrative remedies," [Doc. 88 at 1], but does not provide any documentation of such. Instead, plaintiff argues that his "original exhibit will clearly show this" [Id.]. Further, plaintiff's response does not address defendants' legal arguments regarding **Abbasi**, qualified immunity, or *respondeat superior*. In sum, plaintiff's response merely reiterates many of the claims from his Complaint.

## **LEGAL STANDARDS**

### A. Motion to Dismiss — Rule 12(b)(1)

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. **Adams v. Bain**, 697 F.2d 1213, 1219 (4th Cir. 1982); **Mims v. Kemp**, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See* **Materson v. Stokes**, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

**B. Motion to Dismiss — Rule 12(b)(6)**

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007); see also **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (applying the **Twombly** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated on other grounds*, 517 U.S. 1206 (1996). In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 1964–65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible." *Id*. at 1974.

**C. Motion for Summary Judgment — Rule 56**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

7

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor

8

of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." ***Beale v. Hardy***, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." ***Celotex Corp.***, 477 U.S. at 322.

### **APPLICABLE LAW**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that inmates exhaust available administrative remedies prior to filing civil actions, even though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] ***Woodford v. Ngo***, 548 U.S. 81 (2006); ***Porter v. Nussle***, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); ***Booth v. Churner***, 532 U.S. 731, 731 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. ***Goist v. United States Bureau of Prisons***, 2002 WL 32079467, at *4 n.1 (D.S.C. Sep 25,

---

[2] 42 U.S.C. § 1997e(a) provides the following: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

2002) (Herlong, J.).  "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[s] judicial discretion." *Ross v. Blake*, 136 S.Ct. 1850, 1856–57 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account.").  But the plain language of the statute requires that only "available" administrative remedies be exhausted. *Id.* at 1855 ("A prisoner need not exhaust remedies if they are not 'available.'").  In *Ross*, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) the "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." *Id.* at 1859–60.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a section 1983, *Bivens*, or Federal Tort Claims Act action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. *See Jones v. Bock*, 549 U.S. 199, 201 (2007) ("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. . . . If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.").  It appears to be the majority view as well that exhausting administrative remedies after a complaint is filed will not save a case from dismissal. *See Neal v. Goord*, 267 F.3d 116, 121–22 (2d Cir. 2001) (citing numerous cases) (overruled on other grounds). The rationale is pragmatic.  As the court stated in *Neal*, allowing prisoner suits to proceed,

so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. *Id.* at 123. In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [42 U.S.C. § 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in federal court.

It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. *See Jones*, 549 U.S. 199. Failure to exhaust administrative remedies is an affirmative defense—prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. *Id.* at 216 (finding that failure to exhaust is an affirmative defense that a defendant must generally plead and prove); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a *Bivens* suit . . . failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (citations omitted)). This Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." *Custis v. Davis*, 851 F.3d 358, 361

(4th Cir. 2017); ***Anderson v. XYZ Prison Shealth Servs.***, 407 F.3d 674, 681–82 (4th Cir. 2005); *see also* ***Banks v. Marquez***, 694 Fed. App'x 159 (4th Cir. 2017) (finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For ***Bivens*** purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." ***Dale***, 376 F.3d at 655 (citations omitted); *see also* ***Woodford***, 548 U.S. at 92–94, 101–102 (finding that the PLRA exhaustion requirement requires "full and proper exhaustion," which includes meeting all the time and procedural requirements of the prison grievance system). The Federal Bureau of Prisons ("BOP") has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). *See* 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10–542.15; ***Gibbs v. Bureau of Prison Office***, 986 F.Supp. 941, 943 (D. Md. 1997).

## DISCUSSION

Here, defendants put forth evidence that "[w]hile Plaintiff filed over 237 administrative remedies while designated to the BOP, the remedies that appear to be relevant to the January 4, 2018, *Bivens* Complaint were not exhausted, as they were rejected for failure to follow procedural guidelines, or, in one instance not appealed any further" [Doc. 81 at 10]. Defendants assert that upon review of plaintiff's administrative remedy history, the following administrative remedy attempts may be relevant to plaintiff's *Bivens* Complaint:

- **Administrative Remedy 914540-R1** was received by the Mid-Atlantic Regional Office on September 16, 2017. Administrative Remedy 914540-R1 broadly alleged staff misconduct and was properly rejected because Plaintiff was not specific about his claims and did not follow proper procedure. *See Exhibit 1*, Williams Decl., ¶ 8, Attachment C.

- **Administrative Remedy 916840-R1** was received by the Mid-Atlantic Regional Office on September 28, 2017. Administrative Remedy 916840-R1 alleged staff misconduct and was rejected because it was not considered sensitive and Plaintiff failed to observe the requirement that he only be allowed to submit one continuation page. *See Exhibit 1*, Williams Decl., ¶ 9, Attachment C.

- **Administrative Remedy 917643-F1** was received by FCI Hazelton on October 23, 2017. Administrative Remedy 917643-F1 requested that Plaintiff be allowed five hours in the inmate library per week. This administrative remedy was denied as a review of Plaintiff's claims showed he was allowed sufficient time to use the library. *See Exhibit 1*, Williams Decl., ¶ 10, Attachment C. Plaintiff did not appeal this denial. *Id.*

- **Administrative Remedy 929178-R1** was received by the Mid-Atlantic Regional Office on January 30, 2018. Administrative Remedy 929178-R1 alleged staff misconduct and was rejected because Plaintiff was first required to submit his request to FCI Hazelton. *See Exhibit 1*, Williams Decl., ¶ 11, Attachment C.

- **Administrative Remedy 929181-R1** was received by the Mid-Atlantic Regional Office on January 30, 2018. Administrative Remedy 929181-R1

13

> alleged staff misconduct and was rejected because Plaintiff's issue was not sensitive and Plaintiff was therefore required to first file a BP-9 request with the institution. *See Exhibit 1*, Williams Decl., ¶ 12, Attachment C.

[Id. at 10–11]. Defendants' evidence also supports their assertion that plaintiff "did not file any additional remedies after January 30, 2018, related to staff members at FCI Hazelton or addressing any alleged incidents giving rise to the Complaint" [Id. at 11]. Thus, defendants argue that "it is clear that Plaintiff did not exhaust all of his remedies for any of the numerous allegations set forth in Plaintiff's January 4, 2018, **Bivens** Complaint" and note that "two of the administrative remedies possibly encompassing the claims set forth in the January 30, 2018, **Bivens** Complaint were filed *after* Plaintiff's current lawsuit was transferred to the Northern District of West Virginia on December 14, 2017, and after Plaintiff submitted the January 30, 2018, **Bivens** Complaint, along with the proper forms" [Id.]. Therefore, defendants argue "[b]ecause Plaintiff has failed to properly exhaust his administrative remedies, Plaintiff's **Bivens** Complaint must be dismissed" [Id.].

In response, plaintiff argues that he "did exhaust all [of his] administrative remedies" [Doc. 88 at 1], but does not provide any documentation of such. Instead, plaintiff argues that his "original exhibit will clearly show this" [Id.]. Further, plaintiff argues that "BOP policy allows inmates to file sensitive remedies straight to the Regional Director[,] and they can accept or deny it" [Id. at 3]. Finally, plaintiff argues that defendants' statement that plaintiff "filed over 237 administrative remedies while designated to the BOP" is in "clear contradiction" to defendants' assertion that plaintiff "didn't file all of [his] administrative remedies" [Id. at 4].

First, with regard to plaintiff's argument that he "did exhaust all [of his] administrative remedies," [id. at 1], it is again noted that plaintiff does not provide any documentation of such

in his response, but instead argues that his "original exhibit will clearly show this" [Id.]. Plaintiff's December 14, 2017, ***Bivens*** Complaint only contains one request for administrative remedy, Administrative Remedy 917643-F1, which requested that plaintiff be allowed five hours in the inmate library per week. *See* [Doc. 7-1]. That administrative remedy was denied by the Acting Warden, as a review of plaintiff's claims showed he was allowed sufficient time to use the library. This same administrative remedy is also included in defendants' Motion. *See* [Doc. 81-1 at 29]. However, despite the Acting Warden pointing out to plaintiff in his denial that "[i]f [plaintiff is] dissatisfied with this response, [plaintiff] may appeal to the Mid-Atlantic Regional Director . . . within 20 days of the date of this response," [id.], defendants' evidence shows that this administrative remedy was appealed no further. Thus, this Court finds that plaintiff failed to exhaust available administrative remedies with regard to this claim.

Additionally, giving plaintiff the benefit of the doubt because he states in his Complaint that his "facts and evidence" are included in his "original petition" because he "only had that one copy" as he "does not have access to a copy machine," [Doc. 7-3 at 1], this Court reviewed plaintiff's previous Complaints for any evidence that he exhausted his administrative remedies. Plaintiff's original Complaint filed in this case, which had deficiencies leading to the filing of plaintiff's present Complaint, contains no supporting documentation regarding administrative remedies. *See* [Doc. 1]. Thus, this Court believes plaintiff must be referring to his Complaint that was filed on October 30, 2017, in the Southern District of West Virginia, [Civil Action No. 5:17-cv-164, Doc. 1], which was transferred to the Northern District of West Virginia and placed on the docket of the Honorable Frederick P. Stamp, Jr., on November 1, 2017, [Civil Action No. 5:17-cv-164, Doc. 5], and dismissed by Judge Stamp on December

15, 2017, after plaintiff filed his Complaint on the Court-approved form and the instant case was opened [Civil Action No. 5:17-cv-164, Doc. 9].

In that Complaint, plaintiff included five (5) requests for administrative remedies. *See* [Civil Action No. 5:17-cv-164, Doc. 3 at 20–24]. Three of the requests are directed to the "Warden or Regional Director," [id. at 20–22], and two are directed to the "Regional Director" [id. at 23–24]. Upon review, those requests only discuss some of the claims raised by plaintiff in his Complaint, and none of them have any responses or even show that they were received by any BOP staff member. Accordingly, this Court finds these documents do nothing to rebut the defendants' evidence showing that plaintiff failed to exhaust his administrative remedies. Even if plaintiff did submit these remedies and simply received no response, which seems doubtful given that there is no signature indicating receipt, the BOP's administrative process instructs prisoners to "consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Thus, if plaintiff did not receive a response within the time allotted for reply, he should have considered the absence of a response to be a denial and appealed to the next level. However, there is no evidence that plaintiff did file any appeal of these alleged ignored requests, and it remains clear that plaintiff did not appeal any requests to the final level, as no BP-11s appear anywhere in the record of this case or plaintiff's previous one.

Second, plaintiff's argument that "BOP policy allows inmates to file sensitive remedies straight to the Regional Director[,] and they can accept or deny it," [Doc. 88 at 3], is true. *See* 28 C.F.R. § 542.14(d)(1) ("If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director.").

16

However, many of plaintiff's requests that were submitted directly to the Regional Director where found to *not* be sensitive, and plaintiff was instructed to file first with the institution, yet failed to do so. Not only did plaintiff not then file his request with FCI Hazelton, but he also did not appeal the Regional Director's decision regarding sensitivity, as again no BP-11s appear anywhere in the record of this or any other case. Accordingly, this Court finds this argument unhelpful to plaintiff.

Third, this Court finds plaintiff's argument that defendants' statement that plaintiff "filed over 237 administrative remedies while designated to the BOP" is in "clear contradiction" to defendants' assertion that plaintiff "didn't file all of [his] administrative remedies," [id. at 4], to also be unpersuasive and unhelpful to plaintiff. The fact that plaintiff filed numerous administrative remedies while in BOP custody has no impact on whether or not plaintiff properly exhausted his administrative remedies with regard to the claims presented in plaintiff's Complaint here. In short, the number of administrative remedies plaintiff filed has nothing to do with whether administrative remedies relevant to plaintiff's Complaint were "full[y] and proper[ly]" exhausted. **Woodford**, 548 U.S. at 92–94, 101–102.

Finally, this Court notes that plaintiff only argues that he did, in fact, exhaust available administrative remedies. Plaintiff does not argue administrative remedies were unavailable, nor does a review of the record reveal such to this Court. While plaintiff's Complaint may hint at some instances that could potentially fit into one of the scenarios where the Supreme Court has recognized the administrative process is considered "unavailable"—such as alleging that certain staff members refused to take or respond to his administrative remedies and that he has faced retaliation for filing administrative remedies—there is no evidence in the record,

17

other than these few conclusory allegations, to suggest plaintiff was prevented from or persuaded against filing any administrative remedies. In fact, the record reveals that the administrative remedy process was *very* available to plaintiff, as evidenced by plaintiff's filing of over 237 administrative remedies while designated to the BOP. All of the administrative remedy attempts that may be relevant to plaintiff's **Bivens** Complaint here received a response and explained why they were properly rejected, other than the requests attached to plaintiff's original Complaint in Civil Action No. 5:17-cv-164, for which this Court, as discussed above, cannot be sure were even submitted. In sum, plaintiff does not argue, nor does the record demonstrate, that there was no potential for any relief through the administrative remedy process or that plaintiff was prevented from using the grievance process through machination, misrepresentation, or intimidation. See **Ross**, 136 S.Ct. at 1859–1860.

Accordingly, for the reasons stated above, this Court finds defendants have met their burden to prove the affirmative defense of failure to exhaust available administrative remedies. Therefore, as the PLRA prohibits bringing unexhausted claims in court,[3] this Court must dismiss plaintiff's Complaint.[4] See **Jones v. Bock**, 549 U.S. 199, 211 (2007) ("There

---

[3] This Court notes that it is irrelevant that plaintiff is no longer in BOP custody, as "[t]he circuit courts of appeals have uniformly found that it is the custody status of a plaintiff at the time an action is *filed*, i.e., when it is 'brought,' that determines the applicability of the PLRA." **Stanley v. United States**, 2013 WL 256023, at *3 (N.D. W.Va. Jan. 23, 2013) (Keeley, J.) (listing cases) (emphasis in original).

[4] As noted above, defendants also moved to dismiss on the basis that all of plaintiff's claims present novel theories that are precluded from the limited contexts in which the Supreme Court of the United States has authorized **Bivens** liability pursuant to **Ziglar v. Abbasi**, 137 S.Ct. 1843 (2017), as well as arguing that all defendants are entitled to qualified immunity. This Court, however, need not address the merits of those arguments because plaintiff's claims are dismissed for failure to exhaust available administrative remedies

is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citing **Porter v. Nussle**, 534 U.S. 516, 524 (2002)).

## CONCLUSION

For the reasons set forth above, this Court hereby **GRANTS** Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment **[Doc. 80]**. Accordingly, plaintiff's Complaint **[Doc. 7]** is hereby **DISMISSED WITHOUT PREJUDICE**. Furthermore, plaintiff's "Motion to Answer to **Bivens** Claim" **[Doc. 89]** is hereby **DENIED AS MOOT**. The Clerk is **DIRECTED** to enter judgment in favor of the defendants and to **STRIKE** this action from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein and to mail a copy to the *pro se* plaintiff.

**DATED**: December 19, 2019.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

---

pursuant to the PLRA.